A regular business, I'd like to turn to Judge Reyna for a motion. Thank you Judge Aproach. It's a real honor for me to move for admission on one of my law clerks. This is Christopher Christ. He is a member, a good standing of the California State Bar. And he's been clerking with me for a close to a year. It's going to be a year and a couple of weeks. And you know, they say, Chris, that time flies when you're working hard. Time must have really flown hard fast for you. And your hard work, your professionalism has brought credit not only to my chambers, to my work, but to the court as a whole. With that, I move for admission. You guys were admission to the Federal Circuit. I think we all agree that the best part about this wonderful job that each of us has are our colleagues on the court. So, with enthusiasm, I grant the motion of Judge Lurie's agreement. You may be sworn in now. First case for argument this morning is 14-1841, Personalized User Model vs. Google. Mr. Carlson, next one when you're ready. May it please the Court. Your Honors, the District Court erred in this case by taking the issue of discovery rule tolling away from the jury by replacing the jury's role as the fact finder and by misapplying binding Delaware law on discovery rule tolling. Let me just start with just the back, just like where we are. This is your counterclaim to sue for breach of contract. Sure, yes. That's the subject of the appeal here. The infringement and the validity has all gone away. Right, exactly. So, at trial, we prevailed on infringement. There was a finding of no infringement. We prevailed on invalidity. There was a finding of invalidity, and we prevailed on the breach of contract claim, which occurred by virtue of the fact that the inventor, Mr. Koenig, was working at his prior employer, SRI. During the time he conceived the inventions of the patent suit, we discovered this during discovery in this case based on confidential documents, a deposition, and interrogatory responses, and subsequently purchased the right from SRI, his prior employer, to assert this cause of action, breach of contract claim. It was tried before the jury, and we won on all counts, including discovery rule tolling. And then, subsequent to trial, the judge indicated that he would likely grant J. Moll in Pugh's favor on discovery rule tolling, and eventually did just that. And we would submit, Your Honor, that there was no basis whatsoever to take this issue away from the jury. The question is whether the prior invention during employment was inherently unknowable. Now, a substantial, well-organized research institution, when a scientist is leaving, has, on the last day or near that period, has an exit interview. And they want to find out whether the employee has fulfilled his contract and assigned all inventions that he's made to the company. Did that occur here? Well, there's no evidence in the record as to whether an exit interview occurred or not. Which means it probably didn't. Well, maybe it did, maybe it didn't. In which case, how could it have been inherently unknowable when they didn't perform these usual standard steps of when an employee is leaving? Well, what the Delaware Supreme Court says in terms of when we determine whether blamelessly ignorant, which is, I think, along the lines of where you're going, is that they look to whether there was facts, the existence of facts that would have put an ordinary person on notice of an inquiry which, if pursued, would have led to the discovery of the facts underlying the cause of action. And so what the Delaware Supreme Court says is, we look to see what would have happened if he would have pursued. So let's say that there would have been an interview and they would have asked the questions. All the inferences at trial, or at least certainly viewed in our favor, would have suggested that that inquiry, if pursued, if, for example, that had happened, would have not accomplished anything in terms of discovering this. Well, how can you say that? Wasn't there an employment contract between SRI and Dr. Koenig that specifically addressed inventions while Dr. Koenig was employed at SRI? Certainly. And the reason why I say that, Your Honor, is precisely based on what Mr. Koenig said at trial. He testified at trial that he did not conceive of the invention while he was at SRI. And so the reasonable inference drawn from that would be that had SRI done an inquiry, asked him what he would have said, one of the things he may have done is lied and said, no, I didn't conceive it during this time. And in fact, the district court below acknowledged that. You're arguing that there was no basis to make a reasonable inquiry. Well, there's the twofold. There's two aspects. Shouldn't we start with employment agreement as a basis? Well, I don't know that an employment agreement, in and of itself, is a basis. And there certainly hasn't been any case law or authority citing that an employment agreement, in and of itself, is a basis to inquire whether someone's... Well, there's an employment agreement that specifically addresses intellectual property rights and the owner of any intellectual property rights that are developed during the term of the employment. And you're employing a research scientist that you have employed in order to develop IP assets. Well, Your Honor, that is a very commonplace agreement that in any technology company comes up. I don't think that every... Essentially, what would be the case if, in fact, the mere fact that you have an employment agreement would put you on inquiry notice to inquire whether there was a breach of that agreement would essentially mean that in any technology company that any time someone leaves, you have to ask the question, did you steal from us? But there were subsequent events beyond the limitations period. There was a patent application filed and issued in this person's name and one of the SRI employees tested this person's invention and weren't those events that would... should have put SRI on notice? Well, Your Honor, with the reasonable inferences viewed in our favor, we would submit and know that none of those things were the clear and unmistakable red flag that the Coleman Court, the Delaware Supreme Court has found is required to put a company on notice. Let's first take the patent application. That was filed five months after he left SRI, after Mr. Koenig left SRI. The testimony elicited by Pune during trial was that we were in this internet gold rush in 1999. People were doing things fast. Well, viewing the facts in our favor, reasonably inferences in our favor, SRI could have viewed this five-month period of time as more than enough time for him to come up with this invention on his own and would not have been a clear and unmistakable red flag. If it is, then we have the situation and this is somewhat akin to what I alluded to earlier that you have a situation where any time a former employee goes to another company and five months later down the road files a patent in the same general field, then there is this duty of that company to go and search and determine whether there was a breach. And especially given... Well, I guess you're saying all these words. I don't think that anyone here suggested that was necessarily the burden. But here, nothing was done. There was no inquiry. And it seems your answer to that, your response to that is, well, if they had asked, he would have lied to them. So whatever obligation they had to ask is irrelevant and shouldn't be held against them. Well, Your Honor, I think as a matter of law, as a matter of Delaware law, there is no requirement for a diligent inquiry. And in fact, that's what Coleman says, specifically says that... Well, but Coleman doesn't undermine or undo. Coleman is consistent with the standards of blameless ignorance and inherently unknowable rights. Those standards still apply. Absolutely, Your Honor. And they do apply. And it's the application of those standards that Coleman shows that you don't actually have to have an inquiry of it in itself if it would have been futile. And what Coleman looks at is that... How can you show? I mean, the burden is on you to show that it would have been futile. Right. And the way you've met the burden, you say, is to say, well, he would have lied to us anyway. No, the burden that we've said initially, what we've initially said is that all the evidence that we relied on in trial and that we relied on to actually bring the counterclaim was confidential. None of it was available to SRI  And so that was inherently unknowable. It was confidential. They hid it. They hid it. It was testimony in trial. What evidence did you introduce that SRI was blamelessly ignorant? Well, that is the notion of them being blamelessly ignorant is in effect the fact that they could not have discovered the breach because all the information was confidential. The information that we relied on at trial and to bring the claim was confidential documents. And, well, if you, I think the evidence would show that, I think the evidence shows that had we, they asked Mr. Koenig that he would have said he did not conceive it at the time while he was at SRI. But there were co-inventors of that patent, right? And people worked together and they could have asked other employees? Absolutely. They could have asked the co-inventors and the result would have been the same. Berthold was one of the co-inventors. You mean they all might have lied? Well, Berthold was not involved in the conception at all. He was actually part of, I think his only contribution was in relation to a dependent claim that happened sometime after, you know, maybe in, he was not involved in this July timeframe while he was still at SRI. So he was not there. And then Tversky, he initially testified that the date was in July of 1999 while Mr. Koenig was employed at SRI. But then once we brought the issue up and brought our counterclaim in relation to this, he changed his story. He changed his story and he said that it was conceived after he left SRI. So there's every inference to suggest that had he done, I'm sorry. No, I just, before your time runs out, I wanted to direct you to your, I guess you have an alternative argument with respect to the tolling question and that's the statutory one. So I thought you might want to spend a couple minutes on that. Sure, I appreciate that. Thank you. You know, this, the tolling, this question is a very, you know, it's a simple question of law really. The statute 8117 of Delaware says that, you know, if at the time the cause of action accrues against any person, it's basically tolled until that person comes back into Delaware. Now there's no case that's comparable to here with the circumstance, similar to the circumstances in this case where that statutory provision has been applied, right? Well, I wouldn't, I would say that there's no case that's on all fours. There's probably only a few handful of cases that discuss it at all, but certainly Saudi basic is, if not on all fours, is similar in some respects. Well, one striking difference, at least in my view, and you can tell me why I'm wrong about this, is between this and the Saudi cases. In the Saudi case, the parties were from Delaware. I mean, Delaware was the only place they could go. Whereas here, California is clearly a jurisdiction where both the parties reside and where this case could have been pursued earlier. Well, actually, in Saudi basic, the plaintiff was a Saudi corporation. They were not a Delaware corporation. And it was a Saudi claim. It was a claim in relation to Saudi law. So there was no other jurisdiction in the United States where this case could have been timely brought, right? Well, I think it could have been brought in any jurisdiction. What happened was that the plaintiff, the Saudi plaintiff, the Saudi basic, the plaintiff brought, and this is what the case is suggesting occurred, is that they were trying to avoid being sued in other jurisdictions. And then they brought a DJ action in Delaware because they thought that it had the most favorable statute of limitations. And so it could have been brought anywhere, but it was the choice of the plaintiff to bring it in, plaintiff Saudi basic, to bring it in Delaware. Well, here, there was no form shopping by Google. Google was in Delaware because that's where Pune filed its case. And, in fact, as admitted by a plaintiff in oral argument, it was actually the first time, oral argument on the J-law below, it was actually the first time that the parties were in the same place where these rights of the breach of contract action could have been fixed. But this provision, 81-17 reads absence from state. Speaking of someone who was in state, but is absent, whereas 81-21 deals with out-of-state cause of action. Well, actually, the Delaware Supreme Court in Saudi basic explicitly says, and this is, I think, at page 18 of the opinion, it says that it is settled law that the purpose and effect of section 8-1-1-7 is to toll the statute of limitations as to defendants who, at the time the cause of action approves, are out-of-state and are not otherwise subject to service of process in the state. There's no suggestion that they have to leave. It just explicitly says that they're out, and that's just what happens. Title of the provision suggests absence from state. You're not absent unless you're normally there. Well, what the Delaware Supreme Court, what they have said is that And we're reviewing a decision of the Delaware judge. Well, but it's a Delaware federal court judge who's not the Delaware Supreme Court. And also, Saudi basic, the plaintiff in the Saudi basic case was never in Delaware. It was never in Delaware. So, it's not like Saudi basic was hanging out in Delaware and then left. They were never in Delaware. And so, I think that that conclusively shows that they don't have to have been there and then left. You're well into your rebuttal time. We'll restore four minutes for rebuttal. Thank you. Good morning, Your Honor. I just wanted to, I'm Richard Sargato for PUM. I just wanted to start out by speaking as to the first argument as to the discovery rule. And it's really important to keep in mind here that Google has a burden to satisfy the test. And the test has been the same for quite a while now in Delaware and remains the same today, which is a two-prong test in which they have to show that it's inherently the injury. Sure. Yeah, you understand that. All right. Well, let me ask you then. What, I mean, just the one fact, clear fact, that all this stuff was confidential. I mean, they got this in this proceeding, but all of it was otherwise confidential. Why isn't that sufficient? Well, one reason, going to the inherently indiscoverable prong alone, I think it still would not be sufficient simply because all it asks is you have sufficient facts that you can then follow up on and dig deeper. I would think that this was found out during discovery. That same discovery could have happened had SRI been vigilant, had they followed up on the objective factors they could have seen and pursued that. Wait, how so? They have an exit interview. The guy says, knowing, you know, I'm doing this because I loved it. No suggestion that there was any wrongdoing. That's apparent in everything he says. And then, they presumably might well have satisfied this requirement, right? Don't you get the impression in the district court that if they had had an exit interview, even if the guy had lied or whatever, that he wasn't necessarily requiring that they go further than that in that instance, right? Absolutely, Your Honor. Absolutely. I think that this is not about did SRI do enough. The fact is, SRI did nothing. And then, there's no evidence that SRI are doing anything. Going back to... McCant would clearly infer that if they had done all of the things that SRI did, they would not have discovered this based on that inquiry. So, why shouldn't that end the case and be sufficient in terms of their burden? Well, Your Honor, going back to what Judge Stark found, I think he directly addressed that. And, he found that three things could have happened. If they had actually      What are you doing here? What are you doing here? What are you doing here? What are you doing here? What are you doing here? What are you doing here? What are you doing here? Where are you going? Three things would have happened. One, he would have said, sure, I have this IP that I'm taking with me. Well, obviously, that would have led one direction. He could have lied, which is what Mr. Perlson has suggested would have happened. That would be a fundamentally different analysis. That would be, essentially, a fraudulent concealment situation. That would be a totally different analysis. I don't think at that point we could really say that if SRI had asked Dr. Koenig... What if the third option, if he had kind of sidestepped the question? So, if he had changed the subject, he had just started talking about families, and then it went on. Would that have satisfied their obligation then, even if he sidestepped the question and they didn't really press it or force an answer? Well, at that point, your Honor, I would suggest that if you're a company and you think you have a right to IP and you ask somebody that question and they stonewall on you, there is, at that point, that subjective factor. You need to dig deeper, and that's exactly where that should have gone. Well, they have a contract. The provision we're talking about, which I think Judge Raynard talked about, it's in the contract. There's an obligation. So, why are we involved in an exit interview? This guy had an obligation to come forward. Why couldn't SRI have said, well, we know he's not taking IP with us because we have a right to presume that he's going to follow his legal obligation under the contract, and therefore, he would tell us if he didn't. So, why isn't that enough to get you by this sort of level of requirement of an inquiry? Well, I would submit that's because this is, again, an equitable doctrine. This tolling provision is an equitable doctrine, and under Delaware law, equity is only vigilant, and there is some minimum threshold that to enforce that, they have to do something. I think if they're simply bringing a cause of action later, I don't think there's a legal claim that you can come back and say, well, you didn't ask me when I left. I think that's the difference, but when they're actually trying to toll a statute of limitations, that is an equitable doctrine and does have this blameless ignorance standard. That is one of the two components. Was there any evidence presented that would have showed that had SROI followed up or made some further inquiry that they still would not have discovered the work that Dr. Koenig did on employment? I would submit no, Your Honor, simply because had they followed up, there were various things. I'm asking, was there any evidence presented to that effect? No, Your Honor. Not that I'm recalling. Okay, under the statute, were they required to present this type of evidence? Was PUM required to present evidence? No, Your Honor. The burden entirely rests on Google on that point. And it was Google's burden to prove one, that it was inherently undiscoverable and two, the blameless ignorance standard.  that Google did not present any evidence that would go to prove that particular point? That is correct, Your Honor. That is correct. Instead, what Google's argument was that this was confidential information and certain documents were kept confidential. But I think it's also important to note, and this wasn't really put before the court, but it's in the briefing, it's mentioned, is that another argument Google dealt with was the argument of whether this IP was related and resulted from the work that Dr. Koenig was doing while he was at SRI. Now, that's an important fact because, again, we lost on that. That's when the jury found, indeed, the IP addition was related to and resulted from the work Dr. Koenig was doing. And that's, again, non-appeal. It's not been challenged. So accepting that predicate fact right there, we have SRI looking at IP that they should have been able to recognize pretty easily as, well, gosh, this is exactly what Dr. Koenig was doing for us for the last several years. I think that that right there is an objective fact that it should have put them on notice that, indeed, let's dig a little bit deeper here. Well, but that came up later, right? They didn't know that at the time of his... Well, whether it resulted from or... If they had looked, they would have found out. I mean, they looked at the patent. The patent is noticed to the whole world, obviously. And once the patent was issued at that time, even a minimal exercise of diligence so they can see what of our former employees patented. Since we think we have a right to their IP, let's take a look at what they patented. Well, they looked at the patent. They see this is what he was working on, apparently. What about the other alternative grounds for affirming the jury? The statute is clear, right? There's no dispute that the statutory language is unambiguous. So you and Judge Stark agreed, undermine clear statutory language for the arguments that this wasn't the purpose. Isn't that a tough road in terms of how we're supposed to construe a statute? I mean, okay, if it's ambiguous, then you start... If there's some ambiguity,    of the statute is clear, frankly, even if the legislature didn't agree with the statute, they would still look at the statute and say, okay, this is what the statute  If they didn't really intend it would be applied as expansively as it was, isn't that up to them to change and not us to change? Well, there certainly is the observed results doctrine. But before you... Long before you get to the observed results concept, I would submit this isn't one statute. This is two separate statutes. And the courts in Delaware have already said these statutes are not meant to be read together. There's actually a case here I have that's in the brief, Glassburg, which came out in 1955 right after these statutes were actually enacted. And it says, according to this court, to read the tolling statute, which is 8117, into the borrowing statute would stultify the effect of the borrowing statute. An out-of-state exception for foreign card transactions will not be read into the Delaware statute of limitations. Essentially, you have two statutes here. Delaware has one statute, which is meant to protect, for example, the inventor and cause of action that arises in Delaware. And then that would be defendant leaves the state. You can't get them. They're hiding out of state somewhere. Well, this statute protects the Delaware blanket to be able to say, you know what, when you came back to the state, I have you now. Maybe in 15 years, but you've come back in. 8121, the borrowing statute, conversely, has the opposite effect. It is meant to prevent foreign shopping by shortening the statute of limitations. Well, what Google has done here is they first took the borrowing statute, which we went with Delaware law here because Delaware has a three-year statute of limitations, whereas California, where the cause of action arose, would be a four- or five-year statute of limitations. And so what they did was they took that four- or five-year between the three years. They said, well, Delaware is shorter, so we'll take Delaware law. Now, that's serving 8121 perfectly, but then it's sort of a Trojan horse situation, where once you have 8121 applied in that three-year statute, they then bring in 8117 and say, but wait, now that we have Delaware law, let's back it way back out. And now we have no statute of limitations effectively. Right, but where's the lack of, but there's, what I'm searching for is a lack of clarity. And you're right, and we can call it a Trojan horse, but the fact is it exists. So why is it not  in a case where, you know, the language is clear, there's no argument of ambiguity? Why isn't it up to them in a case where there's no argument of ambiguity? To say, whoops, we goofed, versus us to tell them they didn't really mean what they said. Well, one, the way the Delaware courts resolve that is to say which statute came first. They enacted, and I want to make sure I'm making sure. Well, you said the Delaware courts, the Supreme Court has kind of adopted this, right, in the Spartan case. So the Supreme Court only spoke, the only time they've spoken on this, they've applied the statute as written. Well, actually, in founding basic, they didn't actually apply it technically. What they did was they said the borrowing statute in the first place, the 8121 statute, didn't apply. And so that was the actual holding of founding basic was the analysis stopped right here. 8121 doesn't apply, so the borrowing statute came over. Then they went on to say, essentially, even if 8121 were to apply, it still wouldn't work under 8117. And we still, and that's essentially where that went. So it wasn't directly applying to anyone saying that 8117 can be applied to 8121. The only time that issue has been looked at, the court came out the opposite direction saying, the borrowing statute was enacted after 8117. So the out-of-state party tolling statute was adopted first, then the borrowing statute was adopted. And in the course of what they've said, well, when a legislature goes ahead and they enact a later statute, they're failure to acknowledge, they knew 8117 was on the book. They made no mention of it, they made no reference to it, implicitly, they therefore, the legislature meant that not to apply. So arguably, the legislature already spoke to this when they did not incorporate 8117 into 8121. And so by virtue of that, the two statutes simply are not meant to be put together. Okay. It's up to you, but you reserved some time for rebuttal on the cross appeal, so which means you've got to get to the cross appeal. Sure, sure. The cross appeal is pretty simple. On this one, again, the term document is the most important claim construction issue. And that's something where obviously, we lost a lot of time. But you filed no J-Law on the P-TECH case. I don't know, but I assume that claim construction might have been a piece of that and you dismissed the appeal and you didn't appeal it. Correct. Game over, right? The patents are dead. Where's the controversy? Well, the controversy there, and that's again, really, it turns here to this pretty important language I wanted to read, which is from Cam Redderby Green, a party that seeks review of the merits of adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in that ruling. The situation we have here is a bad claim construction. Well, it's frustrated by the vagaries of that ruling. It is. Really? I mean, how do we apply that here? How do we know that was really... We vacate the claim construction. I mean, that's essentially what we're asking for here is a situation where we have a bad claim construction that we can't appeal. We really can't. Okay, so you can't appeal. Case over, right? There's other patents, though, that have that exact same claim term in this family of patents. Those patents aren't invalid. And now, is there a live controversy after them? There's not. But our only concern here is a very small, narrow concern here. Well, whether you have a concern or not doesn't mean, as Judge Rainer pointed out, there's some controversy. There's a live controversy here. I mean, sure, I have a concern about a lot of things, but that doesn't mean that I can go into court and get an Article III court to decide it. That's correct. And so to that end, we're not asking the court to construe document. We're asking the court simply to vacate the construction because, again, it doesn't affect the outcome here. The patents are dead here. Well, I mean, that's not an answer. I mean, whether or not there's a... For us to do anything, it's not a question of like, okay, so it's a little shaky whether you can adhere to this case, so all we're asking you to do is vacate rather than reverse. So really? I mean, that's not... It's there. I mean... What's there? Well, your question there, that's a very... How can we even do that if we don't have jurisdiction over your... And that, again, is exactly... If that's the outcome, that's fine as well. You didn't preserve the issue, right? You didn't move for a JMO on this particular issue. No, because... So there's not a lot of controversy. It would have wasted the court's time to do that here. That's exactly... Well, it's kind of wasting our time, too, because you bring up an issue and there's no controversy on it. Exactly. And we're doing it out of abundance and making sure we're not bound by that two years down the road. Wait, so you think whatever collateral will stop a thing or whatever might conceivably come down the road, the fact that you raised this as a cross-appeal and took our time and effort in dealing with this issue, just the fact that you raised it, so you did it just for a process kind of reason? No. There's been various factors in this, Your Honor. We genuinely... We feel the claim of obstruction is wrong. We wanted to raise it. We feel like there are reasons here, arguably, that it could be a lot of controversy, but I probably side with you that it's not. So, I ultimately agree with you. Thank you. Thank you. I'd like to just address a few points. First of all, on 8117, there was some discussion about the borrowing statute and the interplay with 8117. So, in Saudi Basic, there was two questions at issue. One related to the borrowing statute and then the other related to 8117. And, it was not dicta, as counsel represents, that happened in Saudi Basic in relation to 8117. There were two reasons and it explicitly says, and this is on page 18 of the Saudi Basic decision, the conclusion that Exxon Mobil's counterclaims were not time-barred was correct for a second independent reason. Even if the borrowing statute did apply and thereby triggered Delaware's three-year statute of limitations, Delaware's tolling statute stopped the running of the statute of limitations until Saudi Basic filed this action and, as a result, became amenable to service of process. It was a second independent reason. The, the case, the Glassberg case was a court of chancery opinion from like 1955 and, to the extent that it held that the borrowing statute and 8117 couldn't be used in the same case, it's clearly overturned by Saudi Basic because it did that. And, we're not actually, we are not relying on the borrowing statute for 8117 to apply. 8117 applies regardless of the borrowing statute. In fact, it's, it's actually Hume that's relied on the, the borrowing statute by having the three-year rather than the four-year limitation from California apply. And, from the beginning, it was actually put, the plaintiff, Hume, that, that said Delaware law should apply. We said, okay, we didn't dispute that. And, they chose Delaware law. And then, now they're trying to suggest that somehow we're being sneaky by using the very law that they, that they applied. So, they are not inconsistent with each other and should be applied just as what was said in Saudi Basic. In terms of the, the point about what could have been discovered through discovery and then also, you know, whether there was evidence presented that a investigation wouldn't, wouldn't have uncovered anything. Do you agree that it was your obligation to present that type of evidence? Uh, yeah, it was our burden and we did that. And, and we did that, I think, in several ways. What do you mean by that? Well, we, we presented evidence that all the evidence that, that we relied on in trial and to bring the claim was confidential and unknown to SRI. That was in evidence, that was presented to the SRI. What, that Koenig said that he didn't conceive it during his time frame while he was at SRI, thus leading to the inference that had SRI ask that same question, they would have gotten the same answer. And this notion that we discovered these things during discovery and that SRI should have done some further investigation to uncover that, there is no evidence whatsoever that, that any further investigation would have done anything. And that, frankly, your Honor, is one of the problems with the lower court's opinion in that it engages in this speculation as to what SRI would have done if SRI would have asked the question at the census interview. To me, that brings us back to, to the question of whether or not there certainly was no evidence to that. But one thing that I think is clear in Delaware law, and I just want to point to that before we out, is that in both the, in the Lawton case, which is the seminal case in 1968 in Delaware, there was no inquiry in the Morton v. Skynails case. And Lawton is the one where the woman had something wrong. Yeah, it's not directly on the point. So, but the point, I think the point is that the plaintiff in this case was blamelessly ignorant of the after admission and injury complaint of. She had no way of knowing that her rights had been violated until the first pain was experienced. And that's the point that we're making here, is that even had SRI ask questions, had they done the exit interview, that the inferences drawn in our favor would show that they wouldn't have discovered anything. That may be the case, but in Delaware law, what it says is that to be blamelessly ignorant is not whether you asked a question, necessarily, but whether an inquiry, if pursued, if you did it, would have uncovered anything. And so, the person who investigates for a month and finds nothing is just as blamelessly ignorant as the person who doesn't ask and wouldn't have uncovered anything. And it basically, Delaware law, logically, does not penalize a party for not conducting an inquiry that would have been too tough. Okay, thank you for your argument. And I know you reserve rebuttal to compete and respond to across the field. That's waived. We thank the members of the Consul and the case